DECISION
{¶ 1} In this original action, relator, Delbert Powell, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order setting his full weekly wage ("FWW") at $178.71 and his average weekly wage ("AWW") at $224.23. Relator seeks a new order instructing the commission to take additional earnings into account and to set his FWW at $848.26 and his AWW at $869.18. For the following reasons, relator's request for a writ of mandamus is denied.
 {¶ 2} On September 30, 2000, relator sustained an industrial injury while working for C R O'Neil Co., his employer and a respondent in this action. The commission allowed a claim for "fracture calcaneus, right." The record reflects no further action on relator's claim for the following year.
 {¶ 3} On October 12, 2001, relator filed a motion requesting that his FWW and AWW be adjusted to reflect wages reported on his 1099 Miscellaneous Income forms for the years 1999 and 2000. A district hearing officer ("DHO") heard relator's motion on November 28, 2001. The DHO set relator's AWW at $224.12 based on wage information supplied by the employer.[1]
 {¶ 4} Relator appealed the order, and the matter was heard before a staff hearing officer ("SHO") on February 4, 2002. After the hearing, but before the SHO issued his order, counsel for relator faxed the hearing officer a copy of relator's Schedule C showing gross receipts and gross income to clarify "a misunderstanding on what the figures represent on the [previously submitted Form 1099] Schedule C." (Joint Stipulation of Evidence, at SR 27.)
 {¶ 5} On February 8, 2002, the SHO issued an order affirming the setting of relator's AWW at $224.12 and establishing his FWW at $178.71. The SHO based his calculations on information provided by the employer, declining to apply the wages shown on relator's 1099 forms because the numbers shown on those forms did not clearly differentiate between wages earned by relator as opposed to wages earned by other individuals.[2] The commission denied relator's administrative appeal on March 6, 2002.
 {¶ 6} On June 15, 2005, relator filed this mandamus action seeking to have the commission's order vacated and an amended order issued. Relator contended that the wage information supplied by the employer was not reliable as it reported conflicting earnings for the year prior to his industrial injury. Thus, the information he provided was the only reliable evidence upon which the commission could base its decision. Furthermore, relator asserted that the Schedule C reflecting gross receipts and gross income was properly incorporated in the record and inappropriately ignored by the commission. Relator continued to argue that his FWW and AWW should be set taking his self-employment earnings into account.
 {¶ 7} Pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, relator's request for mandamus was referred to a magistrate. On February 22, 2006, the magistrate issued her decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In her decision, the magistrate properly noted that factual disputes are fully within the sound discretion of the commission, as are questions of the weight and credibility of the evidence presented. With evidence concerning relator's wages presented by both parties, the magistrate found that it was not an abuse of discretion for the commission to rely on the evidence submitted by the employer rather than that submitted by relator. Accordingly, the magistrate found that the evidence provided by the employer constituted "some evidence" upon which the commission could rely and recommended that the requested writ of mandamus be denied.
 {¶ 8} Relator filed objections to the magistrate's decision. However, with the exception of noting a typographical error, relator's objections merely raise arguments substantially identical to those previously submitted to and considered by the magistrate. The magistrate adequately addressed the issues raised by relator's objections within her decision. We agree with the reasoning of the magistrate.
 {¶ 9} Thus, following an independent review pursuant to Civ.R. 53, we find that the magistrate properly determined the pertinent facts and applied the appropriate law to those facts. However, we do note that the magistrate's second finding of fact contains a clerical error. We now correct that error: the 1999 "Form 1099/MISC" indicated non-employee compensation in the amount of $31,434.00, not $314.34. With that correction, we adopt the magistrate's decision as our own. Relator's objections are overruled, and the requested writ of mandamus is denied.
Objections overruled; writ of mandamus denied.
Klatt, P.J., and Brown, J., concur.
[1] For reasons not apparent in the record, the DHO did not address relator's FWW.
[2] Relator was a contractor, covered under the employer's workers' compensation plan, who employed others to help him complete jobs.
 (APPENDIX A) IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
The State of Ohio on Relation : of Delbert Powell, : Relator, : v. : No. 05AP-916 C R O'Neil Co. and The Industrial : Commission of Ohio, : Respondents. :
 MAGISTRATE'S DECISION Rendered on February 22, 2006 David Lancione Associates, LLC, and David Lancione, for relator.
Jim Petro, Attorney General, and Gerald H. Waterman, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 10} Relator, Delbert Powell, has filed an original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order setting his full weekly wage ("FWW") at $178.71 and his average weekly wage ("AWW") at $224.12, and ordering the commission to take into account relator's other earnings and set his FWW at $848.26 and his AWW at $869.18.
Findings of Fact:
 {¶ 11} 1. Relator sustained a work-related injury on September 30, 2000, and his claim has been allowed for "fracture calcaneus, right."
 {¶ 12} 2. On October 12, 2001, relator filed a motion requesting that his FWW and AWW be determined. Relator's motion was supported by a statement from relator indicating that his total earnings from August 19 through September 30, 1999 was $3,835. Relator also attached two "Form 1099/MISC," one from 1999 indicating non-employee compensation in the amount of $314.34 and the other from the year 2000 indicating $26,942.
 {¶ 13} 3. Respondent C R O'Neil Co. ("employer"), provide a monthly breakdown for payments made to relator for total labor performed by him individually and by his crew from October 1999 through September 2000. According to the information provided by the employer, between October 1999 and September 2000, relator himself was paid a total of $11,654 for wages. According to the same document, the remainder of relator's crew was paid a total of $18,853.
 {¶ 14} 4. Relator's motion was heard before a district hearing officer ("DHO") on November 28, 2001. The DHO set relator's AWW as follows:
It is the order of the District Hearing Officer that the claimant's Average Weekly Wage is set at $224.12. This sum is based on the claimant's total earning of $11,654.00 during the fifty-two weeks prior to the date of this injury. This order is based on the wage information submitted to the file by the employer on 12/03/2001.
At hearing, claimant argued that his Average Weekly Wage should be based upon the 1999 and 2000, 1099 forms which the employer provided to him for those respective tax years. However, the employer has demonstrated that the figures on the 1099 forms represent monies paid to the claimant's company for his labor as well as his employees' labor. To set the claimant's Average Weekly Wage based on those figures would provide a windfall to the claimant since these figures do not approximate the wages the claimant would have earned but for this injury. For this reason, the District Hearing Officer declines to utilize the claimant's 1099 forms in calculating this Average Weekly Wage.
 {¶ 15} 5. Relator appealed and the matter was heard before a staff hearing officer ("SHO") on February 4, 2002. The SHO determined relator's FWW as follows:
The Staff Hearing Officer sets the full weekly wage at $178.71. This figure is based on the claimant's gross wages in the seven days prior to injury. Based on the employer's 11/30/2001 letter indicating that the claimant earned $766.00 in September of 2000, the figure of $175.00 is reached as follows: $766.00 divided by 30 equals $25.53 times 7 equals $178.71.
 {¶ 16} Thereafter, the SHO determined relator's AWW as follows:
The Staff Hearing Officer affirms the setting of the average weekly wage at $224.12. This figure is based on the claim-ant's gross wages in the year prior to injury of $11,654.00, as reflected in the employer's 11/30/2001 letter, divided by 52.
The Staff Hearing Officer affirms the denial of the claimant's request to have the entire amount shown on the 2000 Form 1099 and a pro-rated amount from the 1999 Form 1099 included in the wage calculations. The 11/30/2001 letter from the employer reflects that those sums on the 1099 Forms constituted earnings for the claimant and other individuals, not the claimant alone. The Staff Hearing Officer did not find persuasive as to the pending wage issues the amounts shown on the claimant's 1998 and 1999 schedule C Form excerpts regarding "gross receipts and sales." As such, the excerpts were not used in the wage calculations set forth above.
 {¶ 17} 6. Subsequent to the hearing before the SHO, counsel for relator sent the SHO a fax transmission which included a copy of relator's Schedule C forms from relator's business venture for the years 1998 and 1999. Those documents showed gross receipts for 1998 in the amount of $84,978 and for the year 1999, $70,225.
 {¶ 18} 7. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 19} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. Stateex rel. Pressley v. Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record.State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewisv. Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder.State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 20} In this mandamus action, relator asserts that the commission abused its discretion in the manner in which the commission determined his FWW and AWW. Relator asserts that he established that he had earnings in addition to the earnings reported by the employer which the commission was required to utilize in determining his FWW and AWW. For the reasons that follow, it is this magistrate's decision that relator has not demonstrated that the commission abused its discretion in the manner in which the commission determined his FWW and AWW.
 {¶ 21} Pursuant to R.C. 4123.56(A), the first 12 weeks of total disability is to be set at 72 percent of the employee's FWW. The Ohio Revised Code does not provide a formula for the establishment of FWW. Instead, that determination was left to the administrative body charged with such responsibilities to determine. Pursuant to Joint Resolution No. R80-7-48, dated June 4, 1990, the following formula is to be utilized to determine FWW. Joint Resolution No. R80-7-48 provides, in relevant part:
THEREFORE BE IT RESOLVED, that the full weekly wage shall be computed in the following manner:
For employees who have been either continuously employed for six weeks prior to the date of injury or who have worked for at least seven days prior to the date of injury, the full weekly wage shall be the higher amount of either:
a) the gross wages (including overtime pay) earned over the aforementioned six week period divided by six, or
b) the employee's gross wages earned for the seven days prior to the date of injury (excluding overtime pay).
For employees who have not been continuously employed for six weeks prior to the date of injury and who have not worked for at least seven days prior to the date of injury, the full weekly wage shall be computed by multiplying the employees' hourly rate times the number of hours he was scheduled to work for the week in which the injury occurred.
 {¶ 22} Relator argues that the commission abused its discretion by relying upon the information submitted by the employer. Relator contends that the monthly totals reported by the employer do not actually correspond to the wages relator earned for the six-week period prior to the date of his injury. Relator contends that he presented the only credible evidence of those wages in his September 21, 2001 letter and that the commission abused its discretion by relying on the employer's evidence that he earned $766 for the month of September 2000, dividing it by 30 and multiplying it by seven.
 {¶ 23} In the present case, both relator and his employer submitted evidence concerning his wages. Relator submitted a statement dated September 21, 2001, indicating that, from August 19 to September 30, 1999, he earned $3,835. The employer also submitted evidence. According to the employer's calculations, relator had been paid $766. The commission utilized that figure of $766, divided it by 30 days and then multiplied it by seven days to find relator's gross wages earned for the seven days prior to the date of injury. Because the calculations utilized by the commission follow the requirements of Joint Resolution No. R80-7-48, the magistrate finds that the commission utilized a proper method for determining relator's FWW. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. See Teece, supra. The determination of disputed factual situations is within the final jurisdiction of the commission and this determination is subject to correction by action in mandamus only upon a showing of an abuse of discretion. State ex rel.Allied Wheel Products, Inc. v. Indus. Comm. (1956),166 Ohio St. 47; State ex rel. Allerton v. Indus. Comm. (1982),69 Ohio St.2d 396.
 {¶ 24} In the present case, relator has not demonstrated that the commission abused its discretion by relying upon the evidence submitted by the employer instead of relying on the evidence he himself submitted. As such, the magistrate finds that relator has not demonstrated that the commission abused its discretion in determining his FWW.
 {¶ 25} R.C. 4123.61 provides for the computation of the AWW and states, in pertinent part:
The average weekly wage of an injured employee at the time of the injury * * * is the basis upon which to compute benefits.
* * *
In death, permanent total disability, permanent partial disability claims, and impairment of earnings claims, the claimant's or the decedent's average weekly wage for the year preceding the injury * * * is the weekly wage upon which compensation shall be based. In ascertaining the average weekly wage for the year previous to the injury, * * * any period of unemployment due to sickness, industrial de-pression, strike, lockout, or other cause beyond the employee's control shall be eliminated.
In cases where there are special circumstances under which the average weekly wage cannot justly be determined by applying this section, the administrator of workers' com-pensation, in determining the average weekly wage in such cases, shall use such method as will enable him to do substantial justice to the claimants.
 {¶ 26} As above indicated, the commission is to determine the AWW based upon the wages earned by the employee for the year preceding the injury or date of disability. In the present case, the commission relied upon the employer's November 30, 2001 letter indicating that relator was paid $11,654 for the year prior to his injury. The SHO divided that number by 52 to arrive at an AWW of $224.12.
 {¶ 27} Relator asserts the commission abused it discretion by relying upon the employer's evidence and not relying upon the evidence he submitted. Relator contends that he uncontrovertedly demonstrated that he had significantly higher wages. However, two points are worth mentioning: (1) Relator did not timely submit some of this evidence, including his profit and loss statements for the years 1998 and 1999. The commission is not required to consider evidence which is submitted after the hearing. As such, the magistrate cannot say that the commission abused its discretion by not relying upon this evidence. (2) Relator's other evidence, including his tax returns, are incomplete. Relator only attached portions of those returns to the commission for consideration and the evidence presented by relator is not as cut and dry as he asserts. To the extent that the commission made the determination that some of the dollar amounts constituted earnings for other individuals who worked for relator and that some of the amounts regarded gross receipts and sales, the magistrate cannot say that the commission abused its discretion by not relying upon this evidence to calculate relator's AWW. Instead, the magistrate finds that the evidence submitted by the employer constituted "some evidence" upon which the commission could rely. The fact that the commission found the employer's evidence to be more credible than relator's evidence does not constitute an abuse of discretion and does not warrant the granting of a writ of mandamus.
 {¶ 28} Based on the foregoing, it is this magistrate's conclusion that relator has not demonstrated that the commission abused its discretion in determining his AWW and FWW and relator's request for a writ of mandamus should be denied.